UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
JOSEPH KASS                                     :
:
               Plaintiff,         :         11 Civ. 7834
:
    v.                                        :         **OPINION**
:
WELLS FARGO ADVISORS, LLC, et al.,              :
:
               Defendants.        :
:
------------------------------------------------x

      This is a motion to dismiss the complaint against Wells Fargo Advisors, LLC ("Wells Fargo") and Wachovia Bank, National Association ("Wachovia") pursuant to Fed. R. Civ. P. § 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. § 56.  Wells Fargo moves to have arbitrated any claims against it that are not dismissed.  Wells Fargo Advisors and Wachovia Bank are affiliated.

      Because of the record developed on the motion to dismiss, the Court will treat it as a motion for summary judgment.

      The Court rules that Wells Fargo and Wachovia are entitled to summary judgment dismissing the fourth cause of action.  Their motion as to the first three causes of action is denied.  The Court denies the application of Wells Fargo for arbitration.

**Background**

1

The facts contained in this opinion are taken from Kass's complaint, defendants' answer, defendants' moving papers, Kass's response, and defendants' reply to Kass's response. All facts are undisputed unless otherwise indicated.

## Procedural History

Kass filed the complaint in this action on October 5, 2011, in the Supreme Court of New York County. On November 2, 2011, the action was removed to federal court. On November 9, 2011, Wachovia filed an answer to the complaint. On December 23, 2011, Wachovia filed the current motion to dismiss.

## The Facts

**The Letter of Credit and Collateral**

In September 2007, Kass opened an account through his Wells Fargo Financial Advisor, Paolo Bagnato, with $25,100.00. Among the documents signed and accepted by Kass was an Account Application, executed on September 2007, which contained a pre-dispute arbitration agreement. In October 2007, Kass deposited an additional $500,000.00 into the account. At that time the total account value was $526,127.00.

On or about November 21, 2007, Kass applied for and received a letter of credit from Wachovia in the amount of $493,829.00 (the "Letter of Credit"), which was to serve as collateral for a loan made to Kass by third-party First Insurance Funding Corp., formerly known as A.I. Credit Corp. ("A.I. Credit"). To provide Wachovia with security for the Letter of Credit, Kass used the

account funds in the account he opened on September 2007 with Wells Fargo (the "Collateralized Account"). Kass states that he had opened this account in September 2007 exclusively for the purpose of providing security for the Letter of Credit.

On or about November 28, 2007, on forms drafted and dated November 21, 2007, Kass, the Bank, and the Broker entered into: (1) a Control Agreement, Trading and Payment of Interest and Dividends Permitted (the "Control Agreement"), and (2) a Security Agreement (the "Security Agreement"), which each expressly referenced the Collateralized Account. The sum of $493,829.00 was moved into the Collateralized Account.

The Control Agreement expressly granted Wachovia a security interest in the Collateralized Account in connection with the Letter of Credit Wachovia had issued. The Control Agreement also established Wells Fargo Advisors[1] (the "Broker") as the "securities intermediary" for the Collateralized Account. This means Kass authorized the Broker to invest the funds contained in the Collateralized Account. The Broker signed the Control Agreement.

Kass claims that he expressly instructed the Broker that the funds needed to be invested safely in order to avoid the need to post additional collateral. Kass further claims that he instructed the Broker that preservation of capital and safe investments were his only priority, as the sole purpose of the account was to serve as collateral for the Letter of Credit.

However, Kass claims that over the following year, the Collateralized

---

[1] Wells Fargo Advisors was formerly known as Wachovia Securities LLC.

Account lost over $100,000.00 due to investment losses caused by the Broker's negligent investments.  Kass claims the loss occurred because the Broker's negligent investment decisions led the face amount of the Letter of Credit to exceed the total funds available in the Collateralized Account.  Wells Fargo claims that the funds in the Collateralized Account were invested as Kass requested. Wells Fargo indicates that documentation accompanying Kass's account shows that the account was managed in an appropriate manner, consistent with Kass's approval.

The Wells Fargo Client Profile Information, which Kass made no changes to before signing and dating the document on October 8, 2007, states that his investment objectives were "Growth and Income" and that his risk tolerance was "Moderate."  In October 2008, Kass moved the Collateralized Account into the Command Asset Management Program/Fund Source Program.  The documents Kass executed designated his "Optimal Blend" of investments as "Tax managed – Moderate Income."  Kass did not designate "Tax Managed – Conservative Income" which was an option listed on the Fund Source Account Agreement.  The Fund Source Program Agreement also contains a pre-dispute arbitration agreement.

The Control and Security Agreements, referred to earlier, required the margin value of the Collateralized Account to exceed $445,000.00, and expressly allowed the funds to be invested in mutual funds.  It appears that the requirement of $445,000.00 was always exceeded, and that investments in mutual funds were made.

Defendants maintain that during the entire period the Collateralized Account was in the Command Asset Management Program, it was managed in compliance with both the parties' investment and collateral agreements.

**Arbitration**

Regarding the brokered account, Kass signed and accepted an Account Application for the undisputed first Collateralized Account, which he executed in September 2007. Kass agreed that arbitration would be the forum for all disputes between him and Wells Fargo. Additionally the Fund Source Account Agreement, which applied when Kass placed the Collateralized Account in the discretionary Command Asset Program for the period from April 2008 until January 2009, before converting the account back to a Standard Investment Account, also contained a pre-dispute arbitration clause. Therefore, Wells Fargo states that all residual actions against it during this time should be determined by an arbitration panel. Kass claims that the pre-dispute arbitration clause is not clear and should not be enforced to apply to the claims at issue. Wachovia does not join in the motion to compel arbitration.

**Payment of Letter of Credit**

Kass also had other accounts with Wachovia, including a High Performance Money Market Account (the "Money Market Account"). Kass opened this account in November 2007, and funded it with $75,000.00. Wachovia alleges that the Money Market Account was also subject to a security agreement (the "Second Security Agreement") to secure Kass's payment and performance under the Letter of Credit. Kass claims that he never signed a

second security agreement in connection with this or any other account that he maintained with Wachovia and never pledged any additional collateral in connection with the Letter of Credit, aside from the Collateralized Account.

In May 2009, A.I. Credit made a demand on the Collateralized Funds pursuant to the Letter of Credit, claiming Kass defaulted on his obligations pursuant to the loan secured by the Letter of Credit. Kass states that he did not default on his obligation and that A.I. Credit improperly made the demand on the Collateralized Funds. The Broker honored A.I. Credit's demand, and transferred all of the funds maintained in the Collateralized Account to A.I. Credit.

However, the funds held in the Collateralized Account were not sufficient to cover the face value of the Letter of Credit. To make up for the deficiency in the Collateralized Account, Wachovia unilaterally transferred $50,000 out of the Money Market Account to A.I. Credit. Kass claims neither the Broker nor the Bank had Kass's permission to transfer funds from the Money Market Account, by contract, or otherwise. Additionally, Kass states that he was never informed of the deficiency in the Collateralized Account and that defendants should not have transferred any funds to the Lender. Defendants, however, note that the terms of the Application and Agreement regarding the Letter of Credit expressly obligate Wachovia to make available "credit for payment against Beneficiary's draft(s) at sight drawn on Bank or its correspondent at Bank's option." This obligation was not contingent on Kass's approval.

Wachovia, for the first time in this motion, introduced the alleged Second

Security Agreement, which Kass purportedly signed on November 21, 2007. If legitimate, this signed contract provided Wachovia the right to use the Money Market Account as security for the Letter of Credit.

**The Second Security Agreement**

Kass claims not to recognize the signature contained on the alleged Second Security Agreement as his own. In his reply, Kass notes the marked visual difference between the signature at issue compared to the signatures Kass admittedly made on the Control Agreement and the first Security Agreement. Kass claims to have no recollection of ever reviewing or signing the alleged Second Security Agreement, which Wachovia claims was signed by him at the same time as the Control Agreement, and the Security Agreement. Kass claims he had never even seen the alleged Second Security Agreement prior to the time that Wachovia filed the Motion to Dismiss. Kass states he would have provided the document to counsel prior to the time the complaint was filed had the alleged Second Security Agreement been in his possession. Kass claims the complaint could not and did not reference the alleged Second Security Agreement.

Wachovia did not provide the alleged Second Security Agreement to Kass or to his personal counsel, Mark McWilliams (1) when they first requested all relevant documents related to the Letter of Credit; (2) in response to letters sent by McWilliams; or (3) in its answer to the complaint, which was filed on November 9, 2011. Kass states the alleged Second Security Agreement surfaced for the first time when the Motion to Dismiss was filed on December

7

23, 2011.

**Causes of Action**

In the complaint, Kass raises four causes of action against the Bank and the Broker: (1) breach of the Control Agreement; (2) negligent conversion; (3) conversion; and (4) Wrongful Honor. The first three causes of action each refer to the alleged $50,000.00 removed from the Money Market Account. Each of these causes of action request judgment in the amount of $50,000.00. The Wrongful Honor cause of action alleges that the Broker and Bank wrongfully honored the Lender's demand for payment on the Letter of Credit. As a result of the wrongful honor, Kass alleges damages in the amount of $493,829.00, the full value of the Letter of Credit.

The first cause of action alleges that the Broker invested the funds in the Collateralized Account negligently, resulting in a $100,000.00 loss. The second and third causes of action appear to assert the same, by incorporating earlier parts of the complaint. The theory is that this negligent investment created the loss of collateral which was made up by taking funds from the Money Market Account. It is not clear from the complaint how a $100,000.00 loss could be made up by transferring $50,000.00 from the Money Market Account.

## DISCUSSION

**Timeliness of the Motion to Dismiss**

Kass argues that the motion to dismiss is untimely. There is no merit to the argument, and the Court will not further discuss it.

**The First Three Causes of Action**

The first three causes of action allege improper transfer from the Money Market Account in the amount of $50,000. It now appears that the alleged Second Security Agreement may be the basis for such transfer. There are issues of fact including the issue about the validity of the Second Security Agreement, which cannot be resolved on the present motion. Therefore summary judgment as to the first three causes of action is denied.

**The Fourth Cause of Action for "Wrongful Honor"**

As stated earlier, A.I. Credit made a demand for payment on the Letter of Credit. The complaint states that this occurred in December 2008. The actual time may have been May 2009. However, the demand was made. The Letter of Credit had been issued by the Bank. The Bank honored the demand and made payment on the Letter of Credit in the full amount of $493,829.00. There was a need to make use of the collateral, and accordingly the Broker transferred the funds in the Collateralized Account to A.I. Credit.

However, there apparently was a deficiency in the Collateralized Account of $50,000.00, and the Bank transferred $50,000.00 out of Kass's Money Market Account to A.I. Credit. Kass claims that all of this was improper and requests damages for the full amount paid, $493,829.00.

Kass's claim is entirely without merit. The Control Agreement required the Bank to honor A.I. Credit's demand for payment of the Letter of Credit, even without notice to Kass. Wachovia properly made payment. The funds in the Collateralized Account were there to secure the payment on the Letter of Credit. Since these funds were insufficient the Bank drew $50,000.00 from

Kass's Money Market Account. The Court has already held that there are issues of fact regarding this withdrawal raised by the first three causes of action. However, Wachovia was clearly obligated to pay the Letter of Credit, so that there is no valid cause of action against Wachovia, for paying the Letter of Credit or against Wells Fargo for utilizing the funds that were available in the Collateralized Account.

Thus, the fourth cause of action must be dismissed. Whether the Bank improperly made a transfer from the Money Market Account involves a different subject.

**Arbitration**

Wells Fargo Advisors requests that any claims not dismissed should be submitted to arbitration. The Bank, Wachovia, does not join in this request. Kass opposes the request. The first three causes of action have not been dismissed.

The first three causes of action include allegations of improper investment management of the Collateralized Account by Wells Fargo. If this is indeed a cause of action in the complaint, it might well be subject to arbitration pursuant to the Command Asset Management Program and the Account Application for the Collateralized Account. However, although improper investment and loss of value are alleged in the first three causes of action, the ultimate claim in each of these causes of action is that the Bank improperly took $50,000.00 from the Money Market Account. There is apparently no basis for arbitration of the latter claim, and neither the Bank nor Kass requests it.

It is therefore not clear on the present record precisely what issue or issues raised by the complaint would be subject to arbitration. The Court is not ready to pull out parts of causes of action and send them to arbitration.

Thus, the request of Wells Fargo for arbitration is denied, subject to having the issue re-visited at a later time when further clarification is available.

### Conclusion

The Court grants the motion of Wachovia and Wells Fargo for summary judgment dismissing the fourth cause of action. The motion is denied as to the first three causes of action. The application of Wells Fargo for arbitration is denied.

This opinion disposes of the motion listed under number 5 on the docket of case 11 Civ. 7834.

So ordered.

Dated: New York, New York
       September 28, 2012

                                          Thomas P. Griesa
                                          U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 09/28/12